Sr 442
109 524

ALLEN S. WIGHTMAN *v.* THE WESTERN MARINE AND FIRE INSURANCE COMPANY.

Notice of a loss of property, insured against fire, should be given with as little delay as the circumstances of the case will permit, to enable the insurers to take measures to protect their interests, and preserve any property saved from damage or loss ; but the preliminary proof, required for the purpose of adjusting the loss, need not be presented so promptly. The clause requiring preliminary proof is always construed liberally. Where notice of the loss was given immediately, a delay of nineteen days from the date of the fire, is not unreasonable.

Notice of the loss of property insured against fire, and the preliminary proof required, are in the nature of an amicable demand; and to put a party upon strict proof, the want of them should be specially pleaded.

The fact of one of the ˙conditions of a policy of insurance requiring that any claim for a loss shall be sustained, " if required, by the books of accounts and other vouchers" of the assured, creates no implied warranty on the part of· the latter to keep books of account, and to be ready to exhibit them when called upon.

Decision in *Marchesseau* v. *Merchants Insurance Company*, (1 Rob. 438,) as to the evidence necessary to prove a loss under an open policy of insurance, affirmed.

To defeat a recovery on a policy of insurance on the ground that the plaintiff set fire to the premises, it is not necessary that the evidence should be such as would convict the plaintiff on a prosecution for arson.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. The plaintiff appealed from a judgment in favor of the defendants.

*Lockett* and *Micou* for the appellant.

*Maybin* and *Grymes*, for the defendants.

GARLAND, J. This is an action on a policy of insurance against fire, to the amount of $4000, " on stock in trade, consisting of looking glasses, frames and plates, clocks and jewelry, &c." in a store in Bienville street in this city. The policy is in the usual form, with the usual conditions and hazards on it. The plaintiff alleges, that on the night of the 19th of April, 1841, the store in which his goods were contained was burned, and

his loss amounted to $3800, which sum he claims of the defendants. The answer admits the execution of the policy, but denies all the other allegations in the petition, and especially denies that the said " plaintiff has complied with the conditions of said policy, particularly that condition which requires proof of his alleged loss, with a particular account of the same, and sustained by the proper vouchers," as required by the ninth condition of the policy. The answer proceeds to state, " that there are circumstances relating to said plaintiff, and the claim now in suit, which render it the duty of said respondents to resist it, and to demand a rigid investigation, namely, that said plaintiff, in the fall of 1839, hired a room in a warehouse in the city of New York, into which he put wooden clocks, looking glasses, &c., and on the evening of, or about, the 17th of November, 1839, a fire broke out among his articles, which was believed at the time to have been caused by design, and for which said plaintiff was insured. That, on the night of the 13th of March, 1840, said plaintiff occupied a loft in the store of D. Felt & Co., in Chartres street in this city, and on that night a fire broke out in his said loft, which caused much damage, and that said plaintiff was then insured at the Commercial Insurance Company of this city, and that the present claim is presented for loss by fire against these respondents."

The ninth clause of the policy says, that " all persons assured by this company, and sustaining loss or damage by fire, are forthwith to give notice thereof to the company, and as soon as possible, to deliver in a particular account of such loss or damage, signed with their own hands, and verified by their oath or affirmation; and also, if required, by their books of accounts and other proper vouchers. They shall also declare on oath, whether any, and what other insurance has been made on the same property, and until such proofs and declarations are produced, the loss shall not be payable. Also if there appear any fraud or false swearing, the claimant shall forfeit all claim by virtue of this policy."

The evidence shows, that in the month of November, 1839, the plaintiff and two other persons or firms, occupied a store in Water street in New York. He was engaged in the business of

vending clocks, looking glasses, &c., and occupied a part of the the first loft and all the second, and had an insurance for one year on his goods. A fire broke out in the second loft, and caused considerable damage to the building and goods. He had some difficulty in settling with the company, and finally the claim was referred to appraisers or arbitrators, who allowed about one-half of what was claimed. The president of the insurance company in New York says, that he had his suspicions about that fire, but what they were he does not tell us, and, we suppose, they could not have been very strong against the plaintiff, who, he says, is a man of good character, so far as he knows. He also consented to transfer plaintiff's policy from the store in Water street to one in the Bowery, which would seem to imply some confidence in him. Plaintiff had been for eight or ten years engaged in business, and bore the character of a punctual steady man.

In the month of January or February, 1840, the plaintiff came to New Orleans, with a quantity of looking glass plates and frames, clocks, and other articles, for sale. He rented the first loft of a store in Chartres street of Felt & Co., who occupied the first floor as a store, and used the upper lofts for a printing office. He took out a policy against fire, for two months, for about $6000, in the Commercial Insurance Company, on his stock in trade. A fire broke out in this store, in March, 1840, in the loft occupied by the plaintiff; but it is proved that it was in the night, and that the plaintiff had no key to the store that was known, he leaving every evening before the store on the ground floor was closed, and not returning until it was opened in the morning, and being obliged to pass through the lower store to get to where his wares were stored. A witness was examined, who was in this house when it was burned. He had the key, and, a short time before he discovered the fire, had been below to light a lamp or candle. He says that he heard some one on the steps and in the plaintiff's room below him, but he did not go to see who it was, although he knew he had, a short time before, closed the doors of the store, and had the key in his pocket, and no one slept in the plaintiff's store. The account given by this witness is rather loose and extraordinary, as, from it, the fire had progressed so much before he discovered it, although awake, that he was un-

able to get down the steps, and was obliged to make his escape through an upper window, sliding down by the water spout. The witness says, that he has no doubt the fire was the work of an incendiary, but cannot say that the plaintiff was the guilty person. The president of the insurance company says, that although he, and the officers of the company, had suspicions as to something being unfair, yet they never could fix upon any facts that would enable them to resist the payment of the loss, and it was settled without a suit. This policy amounted to about $6000, and did not more than cover the loss.

In the month of November, 1840, the plaintiff again brought from New York to this city, an assortment of looking glass plates and frames, clocks, and other articles, invoiced to nearly $11,000. He rented the store No. 11 Bienville street for one year, which was a large establishment, and not having use for the whole of it, he sub-leased a part of it to one Newcomb, a furniture dealer, to Treadwell, a commission merchant; and one McIntire, a cabinet maker, slept in the house, and assisted Newcomb in his business. The plaintiff took out the policy sued on. Treadwell had a policy for $4000, in the defendants' office, on his goods. Newcomb had one for $14,500, and McIntire had one on his tools, &c., for $200; and other persons in adjoining stores had policies to the amount of more than $18,000, all of which were settled by the defendants without suit, so far as we are informed. During the winter, the plaintiff received some other goods from his establishment in New York, and from his correspondents, and sold a great portion of them. In the month of April he proposed to return to the North, and spoke of leaving on different days, but did not do so. He had finally fixed on the 20th of April as the day of his departure, and agreed with the witness, Newcomb, that they should meet that morning to make an inventory of the goods, which he proposed to leave in his charge. The fire occurred about nine o'clock, on the night of the 19th of April, 1841. The evidence shows conclusively, that on that evening, the plaintiff left the store about half-past six o'clock, P. M. in company with two persons; he went with them to Canal street, where one left him; with the other he went to the National Hotel, where he boarded. After tea, the two descended to

the street, where they waited some short time for another person who had agreed to meet them; the party then proceeded to a billiard table in Common street, where they remained until the alarm of fire was given, with the exception of a space of time of from ten to fifteen minutes, that the plaintiff was absent from the room, saying, when he left, that he was going to one of the private apartments in the City Hotel for a necessary and urgent purpose, it being proved that he had been seriously affected with a diarrhœa for several days previously. McIntire says, that he closed the store himself about dark; he locked it, and afterwards returned and let his dog out, which he had left in the store; he again closed it; he saw nothing wrong at that time; he then carried the key to Newcomb's store in Royal street, where he left it. He then went to the billiard room, where he knew the other parties were to be, and remained until the alarm of fire was given, and he went with them to the place. When the firemen and crowd assembled, they had to break open the doors of the store; and young Newcomb testifies, that the key was in his brother's store in Royal street. The testimony of Banks is, that he was the owner of the store, upon which he had no insurance; that he arrived at the place soon after the alarm was given, where he met McIntire, and accused him of setting the house on fire, which he denied. Banks first said, that the fire began in the back part of the store, on the lower floor, and afterwards swore it was on the second floor. The day after the fire he says, that he met the plaintiff, who told him, that as the store was destroyed, the lease was annulled, and asked for his notes, to which he replied, that he was in a great hurry. Banks then asserted, or insinuated, that the plaintiff set the store on fire; and several witnesses say, that they never heard of such an accusation until he made it. It is evident that this witness testified with some feeling on the subject; and the judge below said, that he placed but little reliance on his testimony. It is proved, that McIntire is a man of good character, as is also the plaintiff, who had a store and clock manufactory in New York, where he had a clerk, who kept his accounts, and that he came to New Orleans with adventures of such articles as he manufactured, and some that he purchased, for purposes of speculation.

Wightman v. Western Marine and Fire Insurance Company.

The evidence is voluminous, and we have endeavored to extract the most material parts of it. The judge below gave a judgment for the defendants, principally on the ground, that the value of the property was not sufficiently established, and that there was a strong suspicion of fraud on the part of the plaintiff; from which judgment the latter has appealed.

In this court, the counsel for the defendants insist, that the plaintiff cannot recover, as the preliminary proof was not sufficient, and was not presented in due time. The same ground was taken in the court below ; but, as it was not pleaded specially, the judge passed it over without particular notice. The answer denies, in general terms, that the plaintiff has complied with the conditions, and made proof as required by the ninth condition of the policy, sustained by proper vouchers. The clause in a policy that requires preliminary proof is always construed liberally. It is made for the purpose of satisfying the assurer that a loss has been sustained, and the proof is not expected to be strictly such as would be received in a suit pending, but such as will satisfy a reasonable mind of the correctness of the demand. Notice must be given according to the policy, and must be within a reasonable time. 7 Cowen, 645. S. C. 6 Prac. Abridgment Am. Cases, 210. 2 Phillips on Ins. 515. Although the policy stipulates that the notice shall be given "forthwith," we do not understand that to mean in an hour, or in any other very brief space of time, but without unnecessary delay. 12 Wendell, 452. And the giving notice of a loss is a different matter from making the preliminary proof, which may be subsequently presented, and generally requires some time to prepare. In this case it is stated, that the notice was given "immediately," and the proofs presented nineteen days after the fire. No objection was made by the company, as to the notice, or delay in presenting the preliminary proof at the time, which goes far to show, that the defendants did not then consider the delay unreasonable; but they said that the loss would not be paid. We have once said, that the notice and proof required is somewhat in the nature of an amicable demand; and that to put a party upon strict proof of it, he should be called upon to do so by the pleadings. We are not prepared to say, that a delay of nineteen days for the purpose of preparing the

proofs, was unreasonable, notice having been given, and the defendants acting in the sale of such property as was saved from the flames. Notice of a loss should be given with as little delay as the *circumstances* of the case will permit, to enable the assurers to take all proper measures to protect their interests, and to preserve what property may be left from loss or damage; but the preliminary proof, which is presented for the purpose of adjusting the loss, need not be presented so promptly. This we believe to be the meaning of the ninth clause, or condition, of the policy. 10 Peters, 507.

The counsel for the defendants insist strongly that, as one clause of the ninth condition in the policy says, that the account of loss shall be sustained " if required by their books of accounts and other vouchers," that there is an implied warranty on the part of the plaintiff to keep books of account, and to be ready to exhibit them when called upon. As to the above clause creating a warranty, we are not disposed to assent to it; and, if it were so regarded, many policies would be avoided, both on marine and fire risks, as many who insure keep no books at all, their business not making it necessary. Warranties and special conditions in policies of insurance, as a general rule, must be strictly complied with; and we do not feel authorized to extend them by implication, as cases may often arise in which it would be difficult if not impossible, to comply with them. The case before us, is an example. The plaintiff had, for several years previous to this transaction, been engaged in business in New York where he had a manufacturing establishment and a store. He had a clerk in his employ, and there kept his books. It was his practice to make an adventure each winter by shipping various articles to New Orleans, and coming with them himself, to sell for cash. It is not shown that he dealt on credit at all. He had his invoice, so as to know the prices his goods cost him, and, with that knowledge, he could sell them on such terms as he thought proper, and by examination ascertain what quantity he had on hand at any time. The fact is, that the plaintiff did keep a small book, not in a very regular manner, in which was put down the quantity and value of the goods he brought with him to New Orleans, in November, 1840, and received afterwards; also the amount of

cash received and remitted to New York. This book does not exhibit a very satisfactory account of the daily transactions of the plaintiff, but it affords some insight into them; and as the clause does not specify what books are to be kept and produced, the one in the record, will, in some degree, comply with it. But it does not appear that when the account of loss, with the proof in support of it, was presented, that the defendants required the production of any books to support it, nor have they since asked for them.

The next ground of defence is, that the amount of loss is not proved by sufficient testimony. That is a question we shall not examine now, but will refer to the doctrine laid down in the case of *Marchesseau* v. *The Merchants Insurance Company*, (1 Robinson, 441, 442,) as to the evidence to show a loss, under an open policy of insurance.

Another ground of defence is, that the plaintiff was the cause of the loss, and the judge below seems to have been of that opinion. In coming to that conclusion, it seems to us, that the judge has assumed as facts, what we cannot consider as proved. He seems to take it, almost as granted, that the plaintiff set fire to his store in New York, in November, 1839, and again to the one in Chartres street in the spring of 1840. He also assumes, that he had a key to the store in Bienville street, at the time of the fire, in 1841. Of these facts, we see no sufficient evidence in the record. It is certainly very remarkable, that the plaintiff should have had his goods burned three times in about eighteen months; yet we cannot say, that that of itself is a sufficient reason to say, that he was the cause of the fires.

The counsel for the defendants contend, that in a case of this kind, they are not bound to produce such evidence as would convict the plaintiff of the crime of arson, if he were on trial for that offence. This we admit to be true; but we cannot assent to the other part of their proposition, that it is sufficient to raise suspicions of guilt, and thereby annul the policy, unless the plaintiff can establish his innocence. If the defendants can establish such circumstances as will, according to the established rules of our jurisprudence, fix a fraud upon the plaintiff, it will, in our opinion, annul the policy. With the views and intentions we now have in relation to the case, we will not go into an analysis of

the evidence, but will content ourselves with saying, that we are not satisfied with the judgment, and think that justice requires us to remand it for a new trial; and it would be more satisfactory to us if it shall be passed upon by a jury.

It is, therefore, ordered and decreed, that the judgment of the Commercial Court be annulled and reversed, and this case remanded for a new trial, with directions to the judge to conform in in the trial thereof, to the principles herein stated, and otherwise proceed according to law; the appellees paying the costs of the appeal.