## HOFFMAN *v.* THE WESTERN MARINE AND FIRE INSURANCE COMPANY.

Where goods insured against fire are destroyed, the insurer is bound to pay their value at
the time of the loss; if damaged only, he is bound for the difference between their value in
their sound and damaged condition. Where the goods are so much damaged as not to be
saleable in the ordinary mode, a fair sale at auction made by the assured, after reasonable
notice to the insurers, or with their knowledge. may be considered by a jury in estimating
the damage, and in ascertaining the amount of the indemnity; but the price for which such
damaged goods were sold at auction by the assured, without notice to, or knowledge by,
the insurers, of the sale, is not sufficient evidence of the value of the goods in their damaged
condition.

Where in an action on a policy of insurance containing the usual condition that, if there be
any fraud or false swearing, all claim under the policy shall be forfeited, there is a diffe-
rence between the amount of loss sworn to by the insured in his account presented to the
insurers and that proved on the trial, such difference is not conclusive evidence of fraud
and false swearing; but the burden of proving that the difference was the result of error,
and not of an intention to defraud the insurers, is on the plaintiff, and, in the absence of any
satisfactory explanation, it must be considered as imposing on the insured a forfeiture of all
claim under the policy.

Where, in an action against an insurer for loss by fire, the defence is that the assured himself
set fire to the premises, the evidence for the defence is not required to be as full and con-
clusive, as would be necessary to support an indictment for arson.

A court may, at the instance of a party, order a case to be tried before a jury, even after
the trial had been commenced before the court alone.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.
The judgment of the court was pronounced by

SLIDELL, J.    This is a suit on a fire policy upon merchandize, bed-room fur-
niture, &c., in a store occupied by plaintiff.    The amount claimed is based upon
an account annexed to the petition.    This account is composed mainly of items
exhibiting the sound value of the goods, as appraised in the store after the fire.
A few of the items are for goods lost or destroyed at the fire, put down at an ap-
praised value.    From the total of these items thus appraised, is deducted the
nett amount which the goods and furniture produced at an auction, ordered by
the plaintiff after the company had refused to pay him, and for the balance—
the difference between the appraised value and the auction sales, being $1231 19,

the plaintiff sues, and has obtained a verdict. The evidence at the trial was of the same character. The appraisements of the goods and furniture were offered, and the accounts of the auction sales were also offered. The jury gave their verdict for the precise balance stated in the account annexed to the petition.

HOFFMAN
*v.*
WESTERN MARINE AND FIRE
INSURANCE Co.

The insurers' liability is distinctly defined by the policy, and by well ascertained principles of the law of insurance. If goods are wholly destroyed by fire, the insurer is bound to make indemnity, by paying their value at the time of the loss. If the goods be not destroyed but damaged, the insurer is bound, by the like rule of indemnity, to pay the assured the difference of value between the goods in their sound and in their damaged condition. The idea of a right of abandonment of the goods, which seems to have existed in the plaintiff's mind, and in that of his principal witness, who assisted him in making out the appraisement, is entirely unsanctioned by the law of fire insurance. Insurance companies sometimes assent to the sale of damaged goods at auction to ascertain the value, but they are under no obligation so to do, without a clause to that effect. When they assent to that course to ascertain the damaged value, the indemnity is the difference between the auction return and their sound value at the date of the fire. Where a sale is thus made with their assent, or, without their assent, yet upon notice to them, it is obvious that they could have an opportunity of being represented at the sale, and of taking measures to prevent an undue sacrifice.

The court below was requested by the defendants' counsel, " to charge the jury that, the difference between the price for which the goods injured by the fire were sold at public auction and the valuation of said goods before they were injured, was not a proper criterion to fix and determine the amount of indemnity for which the defendants were liable under their contract of insurance, and that the amount of damage or injury sustained by the property insured ought to have been proved by other testimony, or legal evidence ; but the court refused to charge the jury as requested, but charged them, on the contrary, that the auction sale and valuation of the property as aforesaid, afforded a proper basis to establish the amount of indemnity to which the plaintiff was entitled." The minds of the jury might have been misled by this refusal, and charge of the court, and it is natural to suppose that they were so, as they have given their verdict for the precise difference between the appraisements and the auction sales.

In our opinion the charge of the court should have been that, one assured in a fire policy is entitled to recover the fair market value, at the date of the fire, of goods totally destroyed, and, as to goods damaged, the difference between the value, at the date of the fire, of goods in their damaged state and like goods undamaged ; and that in ascertaining the damaged value, a fair sale at auction made by the assured, in cases where the goods are so much damaged as not to be saleable in the ordinary mode, and upon reasonable notice given to the insurer or, with the insurer's knowledge, may be considered by the jury in estimating the extent of damages, and ascertaining the amount of indemnity. But that when an auction sale is made by the assured, without notice to, or knowledge by, the insurer, the mere returns of sale are not of themselves sufficient evidence of the damaged value.

In the present case the insurers were parties to the appraisement, their own agent having acted and signed as one of the appraisers ; and as no fraud or mistake in the framing of the appraisement is proved, the company is bound by it, as *primâ facie* evidence of the sound value of the goods, both of those lost or

HOFFMAN
*v.*
WESTERN MA-
RINE AND FIRE
INSURANCE CO.

destroyed at the fire, and of those which existed at the store, after the fire, in a damaged condition. But there is no satisfactory evidence in addition to the auction sales, to show the extent of the damage.

It is obvious that, by taking the mere auction sale, made without proof of notice or privity of the insurer, a fair measure of indemnity is not given, for goods sold under the hammer as damaged goods, might well be sacrificed. In the present case we are not able to say whether there was a sacrifice as to the merchandize, as the appraisement was single, to wit, of sound value only. But with regard to the furniture, it appears that the appraisers made a double appraisement, estimating the value before the fire at $231, and the damage by the fire, which was the loss to the plaintiffs, at $45; thus leaving its value in its damaged condition at $153 54; whereas it was sold at auction for the gross sum of only $48 12, and a nett sum of $42 46, which latter amount only is credited to the insurers by the plaintiff's petition and by the finding of the jury. We should not suppose the sacrifice as great in the case of the merchandize, but we are still left in doubt by the evidence as to the extent of the damage, having no guide but the auctioneer's return.

Under these circumstances, and without entering into a consideration of the charges of fraud, we deem it our duty to remand this cause. In doing so, however, it is proper to notice some other questions of law presented in this case.

The defendants asked the court to charge the jury that, "the difference between $3,688 80, the amount sworn to by the plaintiff in the account presented by him on the 5th August, 1843," (three days after the fire,) "and the account in evidence, is to be considered by the jury as evidence of fraud and false swearing by the plaintiff, so as to bring him under the effect of the 9th condition of the policy of insurance in this cause." The condition is the usual condition; it follows the usual clause as to giving notice to the company, delivering a particular account, &c., and is in these words: "Also if there appear any fraud or false swearing, the claimant shall forfeit all claim by virtue of this policy." The plaintiff, on the other hand, asked the court to charge that, "if the plaintiff fail to sustain his affidavit by direct evidence to the amount claimed, he is not therefore necessarily to be considered as having sworn falsely, and thereby forfeited the policy."

The court gave the charge as requested by the plaintiff, but added that, the false swearing must be an *intentional* false swearing, for the purpose of recovering from the insurance company an amount of value beyond what the party knew to be the value of the goods in the store. And the court further charged as requested by the defendants.

We think the course of the judge was substantially correct. His charge, as a whole, substantially amounts to this: that the jury will consider whether the discrepancy between the account sworn to and the value as proved at the trial, is to be fairly attributed to an intention to defraud the insurer, or to an innocent error on the part of the assured; that the burden of explanation is upon the plaintiff; and that, if the discrepancy be unexplained to the satisfaction of the jury upon a fair consideration of the whole evidence, it imposes upon the assured a forfeiture of all claims by virtue of the policy.

The defendants asked the court to charge the jury that, "the evidence to prove that the plaintiff set fire to his own store is not to be as full and conclusive as on an indictment against him for arson, but that the same may be shown by presumptions as well as by direct evidence; and that, if they believe presumptive or circumstantial evidence exists to support such a defence in this case, they must find

for the defendants." The court refused so to charge, but appears, in the terms of plaintiff's application, to have charged the jury that, "in a claim against an insurer for loss by fire, when the defence is that the assured himself set fire to the premises insured, the facts are to be as fully proved as on an indictment for arson; but where a policy provides against fraud and false swearing, any evidence which will satisfy a jury that there was fraud or false swearing, is sufficient to justify a verdict for defendants." The court further added, in adopting the plaintiff's application, that, "in a matter of this kind, every species of evidence, whether circumstantial or presumptive, which tends to convince the mind, may be adduced, whether on the one side or the other."

We think that the jury should not have been instructed to require the same full proof to discharge an insurer, as would be necessary to convict the assured for arson under our statutes. The position of the claimant in the one case, and of the prisoner in the other, are not identical; and a jury might, perhaps, with justice refuse to condemn the defendant in the criminal prosecution, to whom, upon the same evidence, they would refuse a verdict, were he the plaintiff in a suit upon a policy of insurance.

The defendants' exception to the order that the cause should be tried by a jury, after the trial by the court had commenced, is not tenable. The plaintiff made his motion for a jury, on the suggestion of the court, that the court desired the trial to be by jury. If a court may, *ex officio*, order a new trial after a judgment has been rendered, it may well suggest and grant the trial of the cause by a jury after the case has been opened. This was a matter within the discretion of the court below, and, considering the nature of the controversy, was very properly exercised.

It is therefore ordered that the judgment of the court below be reversed, and that this cause be remanded to the Fourth District Court of New Orleans, for a new trial; the plaintiff paying the costs of this appeal.

*W. H.*, and *R. Hunt*, for the plaintiff. *Maybin* and *Roselius*, for the appellants.