No. 5160.

JOSEPHINE BREARD VS. THE MECHANICS' AND TRADERS' INSURANCE COM-
PANY.

The testimony of witnesses will have no weight with this court, if intrinsically im-
probable, and suggestive of collusion, and conspiracy.
The defense that plaintiff has violated, in some particular, the policy of insurance
sued on, must be proved by the defendant.
A wife holding property in her own name, donated to her by her father, during
marriage, has an insurable interest in it.

APPEAL from the Fourth District Court, parish of Orleans. *Lynch*,
J.

*Cotton & Levy*, for plaintiff and appellant.

*H. N. Ogden*, for defendants.

The opinion of the court was delivered by

MANNING, C. J.  The object of this suit is the recovery of three thou-
sand seven hundred and fifty dollars, the loss alleged to have been
caused by the burning of plaintiff's residence, and the further sum of
five hundred dollars for loss occasioned by the burning of her furniture,
the former being insured by the defendant for forty-five hundred dollars,
and the latter for five hundred.  The defense is that plaintiff wilfully
caused the burning with intent to defraud the company—that she did
not comply with the requirements of the eighth condition of the policy—
that the affidavits of loss contain an overstatement of the value of the
property injured by fire with the view of deceiving the company—and
that she had no insurable interest in the property.

The case hinged on the charge of arson in the lower court, and the
judge sustained the defense in that particular, and rendered a decree in
favor of the defendant.  We differ *toto cœlo* with his conclusions.

The fire occurred on the night of 27th. of September 1870.  Two or
three weeks before, the plaintiff went to Mississippi on a visit to her
father, taking her children with her, and leaving her house and its con-
tents in charge of a woman who lived next door, and who was her laun-
dress.  This woman is the wife of Edward Johns, of whom we shall hear
more anon.  The husband of plaintiff is a steamboat-man, sometimes
captain, at others clerk, always part owner.  He was in the Ouachita
trade then, and at the time of the fire was on the river *en route* to New
Orleans.  He was absent when his wife left on the visit to her father, and
she had suggested to him in a note to give Johns written authority to
look after the house.  Accordingly on his return from that trip, he sent
for Johns, wrote the authorization, gave him a dollar and a dram, and
left port for the Ouachita.  Arriving at New Orleans on next return trip,
he heard of the conflagration, and of some suspicious circumstances of

Johns' conduct, presently to be noticed, whereupon he made affidavit charging Johns with arson and had him arrested and imprisoned.

Here are events in a natural order with an air of *vraisemblance* enveloping them. And now begins the series of judicial investigations, and disclosures preceding and accompanying them, which have entailed serious consequences upon many of the parties to them.

Edward Johns, thus imprisoned on the charge of arson, discloses to Edgeworth, captain of the police at Algiers and Gretna, that he did burn the house, but it was at the instigation of Captain Breard, and under a promise of reward—that when Breard gave him the written authorization to take charge of the house, he also employed him for the incendiarism for which he was to receive one hundred dollars, and paid him one dollar thereof on the spot, perhaps to bind the bargain. Breard was in his turn arrested, and carried before the parish judge for preliminary examination, when Johns being produced as a witness swore that he had never told Edgeworth that Breard had employed him to burn the house. Breard was discharged. Johns remained in prison, and at the next term of the district court, not he, but Breard was indicted for complicity in the burning. Breard was again arrested, was admitted to bail, gave bond, and when called for trial did not answer, and his bond was forfeited. He had fled.

Johns shall be permitted to tell his own story. He is speaking on 22 of December 1870 under oath. He is a laborer cutting wood on the levee, and lives in Freetown, Jefferson parish—is acquainted with plaintiff and her husband, but slightly with the latter—became acquainted with them the previous March. On the Friday previous to the fire received a message from Capt. Breard that he wanted to see him, and he went to the steamer on which Breard was employed where he found him. Breard took him up stairs in the office, and thus addressed him, "Edward, do you want to make some money?" The response was what might have been expected, and then Breard added—"that house of mine I have got pretty well insured. If you will set it on fire in the course of three or four days I will give you one hundred dollars for so doing." Johns took time for reflection. He received a dollar, went his way, returned the next day, agreed to execute the commission, and received the same sum as before. "On Tuesday the 27th. of September," we will now quote literally, "I made up my mind to accept Capt. Breard's proposition, and on that night between the hours of 11 and 12 o'c I procured a gallon pot with some coal oil and pitch pine and repaired to the premises, went up stairs, placed the pot and pitch pine on the southeast corner of the house under the rafters, and applied the match to the coal oil and pine and left the premises, and in about half an hour after I left the house, the fire made its appearance and the buildings were burned down."

The testimony of one Bradley at one of the criminal investigations is in evidence on this trial. He is a friend of Johns, and was told by him that the house of Breard was to "go up." Bradley communicated this to his brother who informed the President of the Insurance Company and two officers were sent over whom he secreted near the premises, but Johns told him he could not burn that night "as all the furniture he wanted to save was not out of the house." Witness informed "the specials" of this change of the progamme and they went away. The next Tuesday witness' wife told him Johns had been to see him and left word the house was to be burned that night, whereupon witness went to bed and to sleep, and heard about eleven or twelve o'clock the noise of people hurrying to the fire. The two special officers were not there that night. " I believe, says this witness, the man (meaning Johns) is too honest to do this thing of himself. I believe he was hired to do it."

Edgeworth's testimony follows. He was captain of police and was the officer who arrested Breard and Johns, and to whom the latter made his confession. We hear now of confessions by Breard also. Breard told him he had a note to pay for a new boat that was building for him. He don't recollect its amount, but Breard told him he had to raise money, and that this man Johns was aware of it, and probably that was the cause of the fire. Johns told him the place or part of the building where he had applied the combustible materials, and on the day after the fire he found some of the pine there and also the pot in which had been the oil. He also found some of the furniture concealed in the grass, and some in the attic of Johns' house. Mrs. Breard told him that Johns had been left in charge of the house, and she hoped things would not go hard with Charley (meaning her husband.) He was acquainted with Breard in Caldwell parish where they both formerly lived. Breard had never put him off the boat while coming down the river for not paying his passage.

This is the testimony upon which the judgment of the lower court is founded, sustaining the defense that the burning of plaintiff's house was procured by her husband. The perjury is transparent. Edward Johns, whose sole occupation is occasional wood cutting on the levee, and who knew Breard but slightly, is sent for by the latter and in the clerk's office of a steamboat is employed to commit the crime of arson. So little privacy was observed that Blanks, one of the witnesses, went into the office while Breard was writing the note authorizing Johns to look after the house and protect it, and the interview between these two comparative strangers, in which the bargain was consummated, lasted says Blanks about ten minutes. Johns communicates his purpose to his friend Bradley, through whose instrumentality two special officers are detailed to watch the progress of the conspiracy and who attend once,

NEW ORLEANS, NOVEMBER, 1877.                    767

Josephine Breard vs. Mechanics' and Traders' Insurance Company.

but are not summoned by Bradley to witness the final catastrophe, although he was apprised through his wife of the appointed time for its completion. Bradley takes no steps to defeat the perpetration of this villainy, but goes to sleep in the immediate vicinity, complacently assuring himself that his honest friend was too good to commit such an act unless he was paid for it. And this too after he had heard from Johns' own lips the reason for not burning on the first night appointed was that he had not time to remove all the furniture he wished to appropriate. When the boat arrives which brought Breard to the city a day or two after the fire, Edgeworth, an officer of police, goes on board with a warrant of arrest for him, informs Breard of it, and is immediately told by him that he had to raise money to pay for a new boat he was building, which Blanks in another place says was to cost a hundred thousand dollars, and that this negro Edward Johns whom he scarcely knew was aware of his necessity, and probably that, Breard is supposed to say, was the cause of the fire. Mrs. Breard expresses to Edgeworth her hope that matters will not go hard with her husband, the proof being that Mrs. Breard was at the time of the fire in Mississippi, and did not return until six weeks afterwards, when the charge against her husband had been investigated by the parish judge, and he had been discharged. Her return was in November, and the second arrest of Captain Breard was not made until December after the finding the bill against him by the grand jury on the testimony of Johns and Edgeworth.

Edgeworth found the morning after the fire furniture, supposed to have been in the burned house, in the possession of Johns. Rhodes, another witness, states that some of it was in the garden of Johns concealed in the grass, and other articles up stairs in his house, and a carpet was found in a barrel on his premises covered up with wood. It was not surprising that Johns was arrested. A day in prison made him communicative, and Edgeworth is promptly at hand to hear from him the disclosure that Breard was the real criminal, a statement he declares to be untrue when testifying before the committing magistrate in Breard's presence a few days afterwards. The final result is that Breard is indicted and flies, and Johns, who by his own confession to Edgeworth, repeated twice afterward in separate judicial proceedings, was the active and avowed perpetrator of the act of arson, is at large unpunished.

The impression made on our minds by the examination of this record is that Breard is the victim of a foul and hideous conspiracy, the instigators of which were prompted by conscious guilt and the need of a shield to protect from its penalty on the one hand, and the gratification either of personal vindictiveness or cupidity on the other.

Thirteen witnesses were sworn at great length, all of whom unite in according to Breard a reputation for integrity, honorable dealing, and a

blameless life. Some of them had known him from his infancy, all had at some time had business affairs with him, and speak from their own knowledge. No gentleman, says one, has a better reputation. I don't think, says another, there is a blemish on his character. I always found him correct, says a third, who had credited him to the amount of $11,000. Yet another says he had credited him for $12,000 and he could have more if he wanted it, and at the time of these events Blanks and he were under contract for a new and costly boat.

The testimony of Breard himself is also taken. His answers are prompt, concise, responsive to the interrogatories, outspoken, and entirely devoid of evasion or any semblance of shuffling. There are no hesitations, no labored or confused explanations, no parrying of uncomfortable inquiries, or partial statements of occurrences. We have scanned it closely, and we do not find there the efforts of a criminal to disguise his guilt, but rather the plain and unvarnished recital of events as they transpired. The reprehensible, and nearly fatal cowardice, which impelled him to flight rather than stand at bay and break the toils of his snarers, implies a consciousness of guilt when considered by itself, but in the light thrown upon it by the developments of all his surroundings, it can be explained but not justified. It may not be unimportant to add that the first ground of defense does not attempt to include the plaintiff in the charge of complicity in procuring the burning, but only her husband, and our opinion is that it is not sustained as to him.

We shall briefly dispose of the others. The second ground does not specify in what particular the plaintiff has not complied with the eighth condition of the policy, and we find that application was made in due time to the defendant by notice, accompanied by an account of the loss and damage sustained. The third, relative to the overstatement of value, is not substantiated by proof. Three witnesses for the defendant state the value of the burned property to be thirty-five hundred dollars. Five witnesses for the plaintiff, not including her husband, estimate the value at sums ranging from forty-five hundred to sixty-five hundred dollars. The fourth objection to recovery is the want of an insurable interest in the plaintiff. The title to the property is in her name. The conveyance is to her father by sale, who in the same act donates it to his daughter. He paid two thousand dollars for the purchase. At first Breard and Blanks bought together. Breard subsequently purchased the interest of Blanks and made considerable repairs, the sum total of cost being more than the sum for which it was insured. The donation of the father was direct to the daughter, and the payment by the husband was for the provision of the wife.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is avoided and reversed, and that plaintiff have and re-

Josephine Breard vs. Mechanics' and Traders' Insurance Company.

cover of defendant the sum of three thousand seven hundred and fifty dollars with five per cent per annum interest thereon from the 29th. day of October 1870, and costs of both courts.

Rehearing refused.