## No. 13,413

### Orleans

---

## CATALANOTTO v. MINNEAPOLIS FIRE & MARINE INSURANCE CO.

---

(January 5, 1931.   Opinion and Decree.)

---

Guy J. D'Antonio and Deynoodt & de la Vergne, of New Orleans, attorneys for plaintiff, appellant.

St. Clair Adams and St. Clair Adams, Jr., of New Orleans, attorneys for defendant, appellee.

JANVIER, J.   Plaintiff was owner of a building in New Orleans on which defendant had issued a policy of fire insurance and which burned under circumstances which led the representatives of defendant to believe that the fire was of incendiary origin, and that either plaintiff himself, or some one instigated by him, was responsible therefor.

There was also a policy of fire insurance on the contents of the building.

The realty and improvements were mortgaged and the fire insurance policy on the building was made payable to the holder of the mortgage to the extent of the interest of the said mortgage holder, and defendant insurance company, realizing that the contention that the owner himself had caused the fire to be started could not be used as a defense against the mortgage holder, paid the amount due under the mortgage, but refused to pay the balance of the face of the policy, which was claimed by the owner of the premises, plaintiff here.

When defendant insurance company paid to the mortgage holder the amount due her under the mortgage, it obtained from her the mortgage notes and a full subrogation to her rights and claims against the owner of the property.

The right to the notes and to the subrogation is claimed by defendant insurance company to result from stipulations in the mortgage clause attached to the policy, reading as follows:

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due, or to grow due, on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of her claim."

Upon refusal of defendant company to pay to the owner the balance claimed under the policy, this suit was filed.

In answer thereto defendant's principal contention is "that plaintiff herein either set fire to said premises himself, or caused said premises to be set afire for the purpose of fraudulently collecting the insurance thereon." Having thus charged that the fire had been instigated by plaintiff, defendant, by way of reconventional demand, prayed for judgment against him in the amount which it had been required to pay to the mortgage holder and for which it had secured a subrogation.

The trial court found in favor of defendant and rendered judgment rejecting plaintiff's demand and also judgment in reconvention in favor of defendant and against plaintiff for the amount defendant had paid to the mortgage holder.

There is little dispute as to the law applicable to matters of this kind.

In a suit on a fire insurance policy the burden rests upon the insurer to establish facts upon which a release from its obligation is predicated. Breard v. Mechanics &

Traders Ins. Co., 29 La. Ann. 764; Ziegler v. Mutual Aid & Ben. Life Insurance Association, 1 McGloin 284; Brignac v. Pacific Mutual Life Ins. Co., 112 La. 574, 36 So. 595, 66 L.R.A. 322.

It is equally well settled that such a defense need be proven only by a preponderance of the evidence, as in any other civil matter. See Dunn v. Springfield Fire & Marine Ins. Co., 109 La. 520, 33 So. 585-587, in which the court said: 

"A preponderance of evidence determines issues of fact in civil causes."

In Baker & McDowell Hardware Co. v. Liverpool & London & Globe Ins. Co., 3 Orleans App. 461, the court said:

"The acquittal of Harvey on his second trial for arson does not affect our conviction of his guilt, for we readily appreciate the fact even if the evidence administered in the criminal trial for arson was of like character to the evidence in the instant record, it might be that under the rule of the Criminal law that the guilt of the accused must be established beyond a reasonable doubt, an acquittal would be warranted. But the rule which requires this character of evidence to fortify conviction in a criminal charge of arson is relaxed in a civil action when this defense is set up, and it is now established by a great weight of authority, that a preponderance of evidence, as in all civil cases, is all that is necessary to establish this defense."

See, also, Exnicios v. Sun Insurance Office, 156 La. 975, 101 So. 383.

It is also firmly established that in cases of this kind circumstantial evidence is not only admissible, but is usually the only evidence obtainable, since it is very evident that, in almost no instance can direct testimony of eye-witnesses be obtained Persons desiring to burn their properties for the purpose of collecting the insurance, or for any other illegal purpose, do not

·discuss their intentions with others, nor do they carry out such intentions in the light of day.

In Hoffman v. Western Marine & Fire Ins. Co., 1 La. Ann. 216, the court said:

"In a matter of this kind, every species of evidence, whether circumstantial or presumptive, which tends to convince the mind, may be adduced, whether on the one side or the other."

In Adams v. Liverpool & London & Globe Ins. Co., 5 Orleans App. 301, we find the following:

"Where the defense in a suit on a contract of fire insurance is that of fraudulent fire, the fact that the assured himself set or caused to be set the fire which destroyed the property, may be established by presumptive, as well as direct evidence.

"The law, in cases of this instant character does not exact that the facts of fraudulent fire must be as fully proven as an indictment for arson."

In Wightman v. Western Marine & Fire Ins. Co., 8 Rob. 442, the rule is stated as follows:

"To defeat a recovery on a policy of insurance on the ground that the plaintiff set fire to the premises, it is not necessary that the evidence should be such as would convict the plaintiff on a prosecution for arson."

Although circumstantial evidence is admissible, it must be remembered that where it is relied on it must be such as does more than throw a mere suspicion of guilt on him who seeks to recover under his policy. In fact, as was said in Adams v. Liverpool & London & Globe Ins. Co., supra:

"It may not be denied that the defendant may sustain its defense by circumstantial evidence, and that the fact that the insured himself set fire to the premises insured are not to be fully proven as on an indictment for arson (although on the latter point there are in this State at least two decisions of the Supreme Court to the contrary (Regnier v. La. State Marine & Fire Ins. Co.), 12 La. 341 and Flynn v. Merchants' Mut. Ins. Co.) 17 La. An. 138) but it is equally undeniable that not only must the fact from which the inference or presumption is drawn be established in evidence, but the inference or presumption to which these proven facts give rise must be strong and almost inevitable, or, in the language of the Code, be 'weighty, precise and consistent.' C. C. 2288."

That the creating of mere suspicion of guilt will not suffice to defeat an action for recovery under a policy was also held in Adams v. Liverpool & London & Globe Ins. Co., supra, in which we find:

"The known fact on which the presumption reposes must draw with it the unknown fact, as an almost necessary consequence. The presumption must be precise, and not susceptible of application to other circumstances than that which it is sought to establish."

Bearing in mind, then, the legal principles which are involved, let us examine the record in an effort to determine whether there is therein evidence sufficient to justify the findings made by the trial court to the effect that plaintiff himself was responsible for the destruction of his property.

We are much impressed with the testimony of the deputy fire marshal and of the officer of the insurance patrol, both of whom arrived at the scene before the fire was extinguished, and who, as soon as they could enter the ruins, did so and found that in almost every room there were the remains of glass demijohns, in some of which were small quantities of coal oil and gasoline, and that there were broken milk bottles placed at various points about the structure, in some instances still

containing coal oil; that an upper window was propped open with a lump of coal, the opening having been left apparently for the purpose of creating a draft and the coal, possibly, in the hope that it might fall into the flames and add to the conflagration. The glass containers to which we have referred, in most instances, of course, were empty, the fuel oil or gasoline having been burned, but in some few, which were located in spots not reached by the flames at the time of the arrival of the engines, the oil and gasoline, as we have said, remained unconsumed.

These witnesses also state that from the burned remnants of furniture it was evident that such as had been contained in the premises had little, if any value, though it was insured for a substantial amount.

Plaintiff and his wife and children, who were absent at the time of the fire, deny any knowledge of or connection with the placing of the various demijohns of oil. They were, however, the last persons shown to have openly entered the house, they had the keys thereto, and no one is suggested as bearing any ill will towards plaintiff. The presence of so many containers of highly inflammable oil is more than suspicious.

We find, also, that the stories told by the various members of plaintiff's family as to the reason for leaving the house deserted are most conflicting and self-contradictory.

It seems reasonable that, if a house owner has absented himself and his family from his home over night and that during that night his house has burned, he will forever afterwards remember exactly what it was that caused him to be away; yet at least three different reasons are given for the unusual visit to the brother's home.

That plaintiff should have suddenly decided to transfer his whole family to his brother's house for the night is, in itself, suspicious. His brother had only a very modest home, which is shown to have been entirely inadequate to house overnight the additional caravan which descended upon it. Unless, then, there was some overpowering reason for such a visit, it is not probable that it would have been made with the entire family and without warning.

The reason for leaving the son, Joe, in the city may have been, as claimed by plaintiff, that he was working as a taxicab driver and did not want to leave his work, but the testimony given by this son to the fire marshal immediately after the fire is far from convincing.

He states that his father, on the night of the departure, which was the night before the fire, had advised him of the proposed visit, yet the father, plaintiff, states that he had not seen his son, Joe, for three days prior to the fire. The particular bit of testimony given by Joe on this point is, to our minds, illuminating. He seems to have remembered that he and his father had discussed what he would say if asked when was the last time he had seen his father prior to the fire, but he, apparently, forgot what the answer should have been. His answer is as follows: "About three days. The night they left."

It seems to us that he had forgotten that his father had instructed him to say that he had not seen him for three days, and, his memory being confused on this point, he gave both answers.

While it may have no bearing whatever

324

on the matter, we find it difficult to erase from our minds the fact that two of plaintiff's brothers had in the past lost property through fires, which were at least known to the fire marshal, and known to plaintiff and to plaintiff's wife.

It is contended that the value of the property was such that the face of the policy was not sufficient to cover it and that, thus, plaintiff had no interest in destroying it. While the cost of original construction may have been as much as the amount of the policy, it is more than doubtful if, under the conditions existing at the time of the fire, the value of the improvements to the owner even approximated the amount for which they were insured. The record shows that, for a long time prior to the fire, the store portion of the premises had been untenanted and that plaintiff, who was cultivating a farm some miles away, probably had no need for the residence portion.

We are also convinced that practically all of the furniture had been removed and that the amount of the insurance on it was much greater than the value of that which remained.

The record convinces us that defendant's contention is not based on mere suspicion alone, but that the evidence in support of it clearly preponderates, and is, in fact, overwhelming.

It was sufficient to convince the trial judge and, since only a question of fact is involved, the judgment appealed from should not be reversed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, at the cost of appellant.

HIGGINS, J., takes no part.