*417
 
 O’NIELL, C. J.
 

 This is a suit on policies of insurance issued by the defendant on a building and furniture belonging to the plaintiff, which were destroyed by fire. The plaintiff claimed the total amount of insurance, $8,000, on the building, and claimed $1,000, being half of the amount of insurance, on the furniture; but his attorney learned, after filing the suit, that most of the furniture insured was in another building, and he therefore remitted all but $243.05 of the claim for insurance on the furniture.
 

 The insurance company set up two defenses to the suit, viz.;
 

 (1) That there was a large quantity (about 80 gallons) of gasoline on the insured premises, in violation of a clause in each policy, declaring that it would be void if gasoline should be kept, used or allowed on the premises ; and
 

 (2) That the plaintiff either set fire to the property himself or caused it to be set fire ¡to for the fraudulent purpose of collecting the insurance.
 

 The judge who tried the case said, in his written reasons for judgment, that the impression made upon his mind by the evidence was that the insured set fire to the house. The judge said, however, that he deemed the first defense sufficient; that is to say, that having the gasoline on the premises caused the policies to be void.
 

 The firemen who extinguished .the fire, and a deputy fire marshal, immediately after the fire was extinguished, found on the premises unmistakable evidence that the property was set fire to and destroyed willfully, and that the large quantity of gasoline referred to was brought there and used for that purpose. It was in nineteen containers — eighteen five-gallon demijohns and a five-gallon can — distributed about the house and along the stairs, from the first to the second floor, and connected by a fuse, made of cotton batting saturated with gasoline. At one end of the so-called set-up was an electric iron, on the floor upstairs, with the current turned on, which burned a hole in the floor, gome of the demijohns were broken or exploded, but enough of the gasoline remained to prove what it was, and enough of the whole system remained to show exactly how the place was set fire to.
 

 The property was occupied by the insured until about three months before the fire. He and his wife and their three children lived in the rear part of the building and he conducted a pool room and soft drink establishment in the front part of the building; but he was prosecuted, on two occasions, in the federal court, for selling intoxicating liquor, and pleaded guilty. For the first offense he was fined $200, and for -the second offense was fined $500, and sentenced to serve a term of one year in prison, but the sentence of imprisonment was suspended on proof that the defendant was ill. The building was then padlocked by the prohibition enforcement officers, under an order of the federal judge, rendered in an injunction proceeding, declaring the place a public nuisance and ordering it closed for twelve months. Picoraro was ordered by the federal officers to move his family out of .the house within 48 hours; and the family did move to another house owned by Picoraro about five blocks away. The fire occurred three months after they moved. Picoraro and his wife testified that
 
 *419
 
 they and their children were at home and asleep when the fire broke out; that about 3:30 in the morning a police officer, whom they were acquainted with, telephoned them that their house was afire. They testified that they had no knowledge whatever of the preparations made to set the house afire, and. did not know of any motive that any one might have had to set the place afire. They testified, in an investigation conducted by the fire marshal, that they had no enemies whom they might suspect of the crime; but they testified afterwards, on the trial of the cáse, that they had enemies, whose names or identity they would not divulge. They declared that there was no gasoline on the premises when they were there or when they left. When they vacated the house, in obedience to the orders of the federal officers, Mrs. Picoraro superintended the loading of the furniture and effects on the truck; Mr. Picoraro being elsewhere in the city. She testified that she left an old electric iron in the washroom; that when the furniture and effects that she desired to move were loaded on the truck she left the house by way of a rear door, which she locked, leaving the key in the lock.
 

 Inasmuch as it is admitted that the gasoline that was on the premises was brought there for the purpose of setting fire to the house and was used for that purpose, the defense that the gasoline was “kept, used or allowed on the premises” in violation of the policy is a matter of no importance. The provision against gasoline being kept, used or allowed on the premises had reference to its being kept, used or allowed there by the insured, or by a tenant or an agent of the insured, and not to its being brought there without his consent or knowledge. If the insured, in this instance, did not know that the gasoline was on the premises, he was not responsible for its being there. If he did know that the gasoline was on the premises, he set fire to the place, or had it done, to defraud the insurance company.
 

 The only question therefore is whether the setting fire to the house was done with or without the knowledge and consent of the insured. Although the circumstantial evidence against him is strong, it would be perhaps not sufficient in a prosecution for the crime of arson to convince a jury beyond a reasonable doubt. Proof beyond a reasonable doubt, however, is not necessary to sustain a charge of arson made in defense of a civil suit on a fire insurance policy. A preponderance of the evidence in such a case is sufficient. The reason is that there is no life or liberty at stake, and the court cannot indulge in undue lenience towards either party without doing injustice to the other. In such a case the court is compelled to decide whether the defense is sustained by a preponderance of the evidence. Wightman v. Western Marine & Fire Insurance Co., 8 Rob. 442; Hoffman v. Western Marine & Fire Insurance Co., 1 La. Ann. 216; Exnicios v. Sun Insurance Office, 156 La. 975, 101 So. 383.
 

 We assume that the party who set fire to the house, or who had it set fire to, had a selfish purpose to serve, or motive for destroying the property. In fact there is expert testimony here to the effect that a pyromaniac would not have made such careful preparation as was made in this case to set a house afire. According to the evidence, Picoraro himself was the only man who had a motive for setting fire to the house. It is true that
 
 *421
 
 the motive was not great, because the value of the building and its contents — together with the value of a small building beside it which also belonged to Picoraro and was uninsured —was almost as much as the amount of insurance on the building and furniture. But the evidence convinces us that the insurance money was more desirable than the vacant building was to Picoraro. Besides, the very sight of the vacant building,' and the thought of its having to remain padlocked nine months longer, was provoking, to say the least.
 

 Aside from the fact that Picoraro may have had a motive or provocation for setting fire to his house, and that no one else had any such motive or provocation, the preparations that were made showed that the one who did the job was familiar with the place. It is true that Picoraro was a man of some means, owning several other' houses and lots, and having about $1,000 in bank and $13,000 in two homestead associations, which he could have drawn out at any time, and owing nothing except a few thousand dollars which his wife had borrowed from her father. But, against that, Picoraro’s character and reputation were not such as to put him above suspicion, in a case like this.
 

 Although there is, of course, some doubt that the plaintiff set fire to his house, or had it set fire to, the preponderance of the evidence is against him. It is so plainly so that we would not be justified in condemning the insurance company to pay him $8,243.05 for his loss, together with the statutory penalty of 12 per cent, and the attorney’s fee, to say nothing of rendering the company liable for damages for making the accusation.
 

 The judgment is affirmed.