ERNEST W. ALY, Appellant, v. TERMINAL RAILROAD ASSOCIATION OF
ST. LOUIS, a Corporation.—78 S. W. (2d) 851.

Division Two, January 7, 1935.

*Charles P. Noell, Charles L. Moore* and *Allen, Moser & Marsalek* for appellant.

*T. M. Pierce, J. L. Howell* and *Walter N. Davis* for respondent.

344

WESTHUES, C.—This case, coming to the writer on reassignment, is an appeal from a judgment in favor of respondent railroad company. Appellant, plaintiff below, sued respondent, defendant

below, for damages in the sum of $195,000 for personal injuries alleged to have been sustained by reason of a defective footboard on the rear of a tender of an engine. The case was based on the Federal Boiler Inspection Act. A trial resulted in a verdict for defendant. Appellant insists the judgment of the circuit court should be reversed and the cause remanded for a new trial because the trial court erred in the giving of two instructions and erred in admitting certain evidence offered by respondent.

Respondent contends the trial court did not err in the respects mentioned and in addition thereto contends that plaintiff, under all of the evidence, was not entitled to a verdict and the trial court should have directed a verdict for defendant. This requires a full examination of the evidence.

Plaintiff was forty-two years of age at the time of the accident. He was employed by the defendant as a switch foreman in the yards at St. Louis, Missouri. On October 25, 1929, the date plaintiff received his injuries, he and other members of a train crew were engaged in certain switching movements in the yards. As to the particular work engaged in at the time of the accident plaintiff testified as follows:

"Q. What time did the accident occur, approximately? A. About 11:25.

"Q. Just describe to the jury what work you were engaged in and just what occurred. A. Well, at the time of the accident I was cutting a car out of van 244.

"Q. What is the van? A. Well, that is Pennsylvania train No. 244. It leaves at 4:50 P. M., and I was cutting this car out and putting it in 154, over on a different track. I undertook to switch this car out and take it in to track 9 at the time of the accident. It was ordered in there by the Pullman Company.

"Q. Where was the train going to that you were making up? A. There was two trains, and one was going to Pittsburgh, Columbus and Indianapolis, and 154 goes to Pittsburgh and New York City."

Plaintiff's explanation of what happened reads as follows:

"A. Yes, sir. And I came back to the shanty after letting the train in track 24, and I looked over north and I saw the engine coming back from the rip track. He had taken the first car down and spotted it and was coming back. And I had my line-up for three trains; 144 to make up, and I had 154 to make up, and 226 in the Pennsylvania yards; and I was going to start to work on 154 first, and I had to go into track 7 and draw this car out into track 9, starting to build this train. The track was open for it. And I looked out across the way and saw the engine coming in there, backing up by the yard-master's shanty, and I walked out of the shanty and throwed the yard switch for the No. 9 track, and I walked east

to the No. 7 track and throwed that switch where I wanted to put the engine in, and when it kind of come down opposite me I told him to bring out three cars; and I heard the telephone ring while I was up there—they have a telephone there with a very loud gong —and when I heard that phone ring I knowed they wanted to talk to me, and it was my duty to go back to the shanty and answer that phone. I throwed the No. 7 switch and told them to bring out three cars, and I jumped on the back end of the engine, on the fireman's side, and rode down about opposite the shanty and answered the phone, and whoever was there had got tired of waiting for me and they was off the phone, and I told the air man, McElroy, I wanted a double and single cut at No. 7, and he went down to make the cut, and I stood around there a minute or two, and I walked over on the right-hand side of this engine, and it was coming out with the three cars; I throwed out my arm to the engineer that I was going to get on, and naturally walked back and stepped on the inside of the rail of track 7 and attempted to board this engine. I raised my right foot up and hit the footboard, and about the time I got it so I would call it a balance, a man balancing himself getting on an engine that is coming to him, that board slipped and threw me under the wheels and cut my legs off.

"Q. Which way did you slip, Mr. Aly? A. It slipped toward the drawbar and throwed me across the rail with my body to the north of track 7, the north rail."

On cross-examination he testified:

"Q. Now, you did step up on it, did you? A. Well, I hit the board, all right.

"Q. You hit the board, all right? A. Yes, sir.

"Q. And did you get in an upright position on the board? A. Not exactly. Not quite. Almost, though.

"Q. Did you get near enough to grab the handrail? A. No, sir; I did not.

"Q. When you got in that position, what happened? A. The board slipped toward the drawbar and throwed me under the wheels.

"Q. How far did it slip? A. I don't know.

"Q. You haven't any idea? A. Yes, sir; I have an idea.

"Q. Well? A. About one inch.

"Q. It slipped about an inch and threw you under the wheels? A. That is my estimation."

The evidence disclosed that immediately beneath the rear end of the tank was a large wooden beam. The footboard was supported and attached to this beam by two "L" shaped metal straps. The top end of each strap was fastened to the beam by two large bolts which passed through the beam. At the bottom the straps extended out from the engine. Upon these extensions was fastened a heavy board which was called the footboard and upon which employees

would ride when occasion demanded. A proper distance above the large beam was an iron rod utilized as a handhold.

The defect, as pleaded in plaintiff's petition, was that the holes in the wooden sill or beam, as well as the holes in the metal straps through which the bolts passed, had, by long usage, worn so that they were much larger than the bolts and thus permitted the footboard to shift sideways. Photographs of the footboard, as attached to the sill, were introduced in evidence.

Albert Milner, a witness for plaintiff, testified that he removed the footboard from the sill and measured the holes. His testimony with reference thereto was in part as follows:

"A. Well, the inside of the holes in the strap was one and one-eighth inches; the bolts were seven-eighths; the hole in the beam was one and three-eighths. The beam was twelve and one-fourth by thirteen and seven-eighths. That was the size of the beam."

On cross-examination he testified:

"Q. Did you ever hear of a footboard swaying to the side? A. Yes, sir.

"Q. You have? A. Yes, sir.

"Q. When? A. Well, they will do that when they become loose, or the holes is worn in the board, or different things that make it."

Witnesses for plaintiff, who testified with reference to the large holes in the beam and metal straps, made their examination of the footboard in February, 1930, following the date of the accident.

Defendant introduced evidence to the effect that there was no defect in the footboard either at the date of injury or the date plaintiff's witnesses made their examination. Defendant's witnesses testified that the manner in which the footboard was attached to the wooden beam made it impossible for it to shift to either side; and there was an iron rod which joined the footboard on each side and which acted as a brace and rendered impossible any side movement of either board without, at the same time, moving the other. Respondent also offered evidence that on the date plaintiff was injured the footboard was examined and found to be intact; that the nuts on the bolts holding the metal straps were tight and that it was impossible for the footboard to shift sideways unless the nuts on the bolts of both boards were loose, in which case it could be shifted very little.

Respondent in various parts of its brief speaks of what proof was necessary to establish negligence. This is not a negligence case. Plaintiff did not attempt to either plead or prove negligence but relied solely upon a violation, by respondent, of the Federal Boiler Inspection Act, Section 23, Title 45, U. S. C. A. It was not necessary for plaintiff to prove negligence in order to make a case for the jury. If plaintiff adduced substantial evidence that the appliance failed to properly function and that this failure to function was the proxi-

mate cause of plaintiff's injury then he made a case for the jury. [Chicago, Rock Island & P. Ry. Co. v. Brown, 229 U. S. 317; San Antonio Ry. v. Wagner, 241 U. S. 476; Spokane & I. E. Railroad Co. v. Campbell, 36 Sup. Ct. 683, l. c. 687, 241 U. S. 497, 60 L. Ed. 1125.]

As the statement of facts indicates plaintiff's evidence of a defect consisted in the showing that the holes in the wooden beam and metal straps through which the bolts passed were enlarged by usage. Plaintiff testified positively that the footboard slipped toward the drawbar causing his fall and injury. In Henry v. Cleveland, C., C. & St. L. Ry. Co., 332 Mo. 1072, l. c. 1076, 61 S. W. (2d) 340, l. c. 341 (1-3), Division One of this court, speaking through FRANK, P. J., said:

"The test of the observance of the duty imposed by the Safety Appliance Act is the performance of the appliance. A failure of the appliance to work efficiently will sustain a charge that the act has been violated, and render the carrier liable for an injury which results from such failure. The question of negligence in the sense of want of care is not an issue in the case. Where an injury results from the inefficient operation of an appliance, whether or not such inefficiency was due to the negligence of the carrier is wholly immaterial."

And on page 342 (6) of the same opinion we read:

"Witnesses for defendant testified that they inspected the brake chain, set and released the brake, and found nothing wrong with it, but since plaintiff offered evidence tending to show inefficient operation of the hand brake, an issue of fact was raised, and the credibility of the witnesses and the weight and value to be given to their testimony were questions for the jury."

So in this case witnesses for defendant testified that the footboard was inspected within a short time after plaintiff's injury and that no defect was discovered. We are of the opinion, however, that appellant made a case for the jury. The jury found for the respondent. If no errors prejudicial to appellant were committed during the trial the judgment should be affirmed.

It is also urged, by respondent, that plaintiff cannot recover in this case because he failed to show that he was engaged in interstate transportation; that plaintiff's remedy, if any he had, was to file a claim with the Missouri Workmen's Compensation Commission. It was incumbent upon plaintiff to prove that he was engaged in work connected with interstate transportation in order to maintain his cause of action. [Gilvary v. Cuyahoga Valley Ry. Co., 54 Sup. Ct. 573, 78 L. Ed. 1123.] Plaintiff, at the time of his injury, was engaged in making up train number 154. The evidence disclosed that this train was scheduled to go to Pittsburgh and New York City. It is evident, therefore, that plaintiff was engaged in work directly

connected with interstate transportation. Appellant has, therefore, pursued the proper remedy.

Appellant complains of Instruction No. 2. It reads as follows:

"The charge laid by plaintiff against the defendant is one of negligence. Negligence is a legal wrong and therefore in this case it is not presumed. In other words, a recovery may be had on a charge of negligence only when such charge is sustained by the preponderance, that is the greater weight of the credible evidence to the reasonable satisfaction of the jury that the charge is true as laid, and it does not devolve upon the defendant to disprove that it was negligent, but, on the other hand, the law casts the burden of proof on the plaintiff to prove that defendant was negligent and that such negligence was the proximate cause of the injury and that such charge of negligence must be sustained by the preponderance, that is by the greater weight, of the credible evidence to the reasonable satisfaction of the jury as above stated. If, therefore, after fairly considering the evidence, you find the evidence touching the charge of negligence against defendant to be evenly balanced, or the truth as to the charge of negligence against defendant remains in doubt in your minds, your verdict must be for defendant."

The giving of Instruction No. 2 was reversible error for two reasons: First, no duty rested upon plaintiff to prove negligence. The charge against defendant was not negligence as the instruction recited, but a violation of the Federal Boiler Inspection Act. An instruction telling the jury that the burden was on plaintiff to prove negligence before entitling him to recover was, therefore, erroneous.

Second, analyzing Instruction No. 2 and taking it as a whole we do not see how it can be otherwise interpreted except that it requires a plaintiff to prove the charge of negligence by such a preponderance of the evidence as to remove any doubt in the minds of the jurors. The instruction so says in unmistakable terms. The fore part of the instruction tells the jury that the charge of negligence must be proven by a preponderance, that is, the greater weight of the evidence. Then it tells the jury:

"If therefore, after fairly considering the evidence . . . the truth as to the charge of negligence against defendant remains in doubt in your minds, your verdict must be for the defendant."

Jurors would no doubt understand by the latter part of the instruction that a plaintiff must prove a charge of negligence by such a preponderance of the evidence as to remove any doubt in their minds as to such charge. We are of the opinion that that would be a correct interpretation of the instruction. Such an instruction casts upon a plaintiff a much greater burden than the law requires. Division One of this court held a similar instruction erroneous in Payne v. Reed, 332 Mo. 343, 59 S. W. (2d) 43. The opinion in

that case refers to and criticizes previous opinions by this court which apparently approved a similar instruction. We deem the giving of such an instruction to constitute reversible error. In this holding we are fortified by numerous authorities. In an earlier Missouri case, Williams v. Watson, 34 Mo. 95, the following instruction was given by the trial court:

"That if, from all the evidence in the case, it is doubtful whether said execution was delivered to said Watson, as alleged by the plaintiff, or not, the verdict of the court sitting as a jury should be for the defendants."

This court in holding the instruction erroneous said:

"The instruction given for the defendants was palpably wrong. Even in a criminal case there must be a *reasonable* doubt to acquit the defendant, and the principle has no application to a civil case." [See, also, Bauer Grocery Co. v. Sanders and Henrich, 74 Mo. App. 657, l. c. 660; Lumsden v. Howard, 236 S. W. 420, l. c. 422 (4), 210 Mo. App. 645; Rothschild v. Am. Cent. Ins. Co., 62 Mo. 356.] In Thompson Lumber Co. v. Interstate Commerce Commission, 193 Fed. 682, l. c. 684, the court in speaking on this subject said:

"In a civil action the complainant is never bound to do more than sustain his case by a preponderance of the credible evidence."

Williams v. Watson, supra, as well as cases from other states, were cited as authority in support of this rule. In 23 Corpus Juris, page 12, section 1745, we read:

"In ordinary civil actions a fact in issue is sufficiently proved by a preponderance of evidence, and the verdict or finding should be based upon the preponderance of the evidence, whether the evidence is direct or circumstantial. Under this rule, a party is not required to prove his case 'beyond a reasonable doubt,' 'beyond doubt.' "

In 64 Corpus Juris, page 710, section 619, we read as follows:

"Instructions relating to the burden of proof must embody a correct statement of the law, they must also be sufficient, but not too broad, ambiguous, or confusing and misleading. So, too, the instructions should not impose a greater burden on either party than the law requires nor relieve a person of the burden imposed by law."

[See, also, Kidder v. Greenman, 187 N. E. 42, l. c. 47 (11); Wright v. Harber, 165 S. E. 616; Liberty National Bank v. Exendine, 11 Pac. (2d) 154, 156 Okla. 26; Picoraro v. Ins. Co. of Penn., 143 So. 360, 175 La. 416.] The cases in which this court has heretofore apparently approved instructions similar to the instruction now under discussion were indirectly, at least, overruled in Payne v. Reed, supra. To the end that bench and bar may not be misled by those decisions we now say that they should not be followed on the point in question.

■ By Instruction No. 6 the court instructed the jury that in determining whether or not defendant was guilty of any negligence they should not consider certain facts brought out in the evidence. Since the question of negligence was not in the case this instruction should not have been given.

■ After the injury of appellant, and on the same day, three employees of respondent made an inspection of the engine and footboard in question. A written report was made, signed by the inspectors and filed with the company. At the trial the three employees who made the inspection were called as witnesses by respondent and testified in detail with reference to the condition of the footboard. The trial court permitted respondent, over the objection of appellant, to introduce in evidence an exhibit, being the written report made by three witnesses. This action of the court was assigned as error.

The record does not disclose any justification for the admission in evidence of this report. The testimony of a witness may not be thus corroborated. In Jones on Evidence (3 Ed.), section 869, page 1373, we read:

"In some cases, the distinction has been suggested that, while such previous consistent declarations could not be received, if made after the inconsistent or contradictory statements, they might be received, if prior in point of time. But it is doubtful whether the distinction is well founded; and it seems clear that since the confirmation of the testimony of a witness by his own outside statements is contrary to the general rules of evidence, the recognized exceptions should not be too widely extended. On the same principle, such a witness cannot be corroborated by proof that, on a former occasion, he has made a sworn statement similar to his present testimony. Nor can a witness be corroborated by proof of his former consistent statements, merely because other witnesses have testified to a different state of facts." [See, also, 10 R. C. L., p. 959, sec. 133, 40 Cyc., p. 2787 (b) ; State v. Johnson, 334 Mo. 10, 64 S. W. (2d) 655, l. c. 659 (4, 5) ; Wahl v. Cunningham, 332 Mo. 21, 56 S. W. (2d) 1052, l. c. 1059 (12).]

Respondent in its brief attempts to justify the ruling of the trial court on the theory that the report was made in the ordinary course of business and constituted a part of the *res gestae.* The record discloses that the three witnesses examined the engine for the purpose of ascertaining if any defect existed that could have been the cause of respondent's injury. A report made in pursuance of such an investigation is self-serving, and when made with such deliberation and at a time so as to be wholly disconnected from the main event, that is, the accident, cannot be admitted in evidence under the *res. gestae* rule. Neither can it be admitted as a report made in the ordinary course of business. It was a report of facts

found by witnesses who were gathering evidence in defense of a probable suit.

What has just been said with reference to the admission in evidence of exhibit one applies with equal force to a report introduced in evidence of an inspection made by witnesses O. B. Martin and H. E. Langreck. Martin and Langreck testified at the trial as to all of the facts contained in the report. The report should not have been admitted in evidence.

Appellant also complains of the action of the trial court admitting in evidence exhibit two, being daily reports of repairs made on the engine involved in the accident. Plaintiff testified that in his opinion the photographs of the footboard introduced in evidence showed a new board had been placed on the footboard which caused his fall. Exhibit two was offered for the purpose of contradicting this evidence. Respondent was entitled to introduce evidence to show that a new board had not been placed on the engine. Therefore, the daily reports which negative such fact were competent.

No other assignments of error or questions were presented. For the errors indicated the judgment of the trial court is reversed and the cause remanded for a new trial. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.