129 So.2d 545 (1961)
John RUSSELL, d.b.a. Sho-Bar, Plaintiff-Appellant,
v.
NIAGARA FIRE INSURANCE COMPANY, Defendant-Appellee.
No. 9430.
Court of Appeal of Louisiana, Second Circuit.
March 10, 1961.
Rehearing Denied April 12, 1961.
Certiorari Denied May 12, 1961.
Joseph S. Guerriero, George Fink, Monroe, for appellant.
Bienvenu & Culver, New Orleans, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
AYRES, Judge.
Plaintiff, as the owner and the insured of the furniture, fixtures, equipment, and merchandise of the Sho-Bar, night club and cocktail lounge, seeks to recover of the defendant fire loss and damage allegedly sustained in a fire of January 13, 1958. Recovery is sought under an insurance policy of the defendant insuring said property against such loss and damage. Alleging that the loss occasioned exceeded the face amount of the policy, plaintiff prayed for judgment in the sum of $21,000, the face amount of the policy, plus statutory penalties and attorney's fees.
The defense is that plaintiff fraudulently set fire to the insured property, or procured some other person or persons to burn it, for the purpose of collecting the insurance. In the alternative, defendant alleged plaintiff was without an insurable interest in the property at the time of the loss, or that his interests in the building improvements exceeded $1,500. In a supplemental answer, defendant assumed the position of a plaintiff, and, in reconvention, sought judgment against the plaintiff for the sum of $2,296.72, together with interest and attorney's fees, on an obligation originally due the Ouachita National Bank, named as an insured, as its interest appeared as a mortgagee of the property insured. The principal amount of this indebtedness was paid by defendant to the bank, whereupon the obligation was transferred and assigned to it.
*546 On trial of the issues thus presented, the court held that the defendant had sustained its special defense that the fire was of incendiary origin and that the plaintiff either personally, or through another or others, burned the property for the purpose of collecting the insurance. Accordingly, there was judgment rejecting plaintiff's demands and in defendant's favor on the reconventional demand. From the judgment thus rendered and signed, plaintiff appealed.
Plaintiff concedes, as the evidence clearly establishes, that the fire was of incendiary origin, but denies the existence of any motive on his part to burn the property, or that he was connected in any manner with the fire.
The record discloses these facts: Plaintiff had operated this night club, located on Louisville Avenue, which comprises a segment of U. S. Highway 80 as it traverses the City of Monroe, for several years. During most of this time, automobiles were permitted to park on Louisville Avenue, but, for about two years preceding the fire, such parking had been prohibited, thus greatly handicapping the operation of this type of business in that location. At the time of the fire, only about six months of plaintiff's lease remained.
Moreover, plaintiff's records were inaccurately kept. Income tax returns showed a loss in operation of the business for each of the years of its operation except one, when a small profit was shown. Income from the operation of juke boxes was not included in any of these returns.
During 1957, plaintiff experienced difficulties in the operation of his business. During the latter part of that year, charges were placed against him accusing him of selling liquor to a minor. As a result, neither the State nor the City would issue or renew his liquor licenses for 1958. Moreover, on December 14, 1957, plaintiff's property was seized at the instance of his lessor because of the nonpayment of rent accrued to the extent of $625 and, accordingly, the business was closed. Even though the business was reopened on payment of the rent, plaintiff was nevertheless notified December 27, 1957, that the City would not issue or renew his license for 1958.
Plaintiff formerly carried insurance on the assets of his business in the sum of $15,000. Nevertheless, he procured a new policy, the one herein sued upon, effective as of December 12, 1957, wherein he caused his insurance to be increased to $21,000. Plaintiff's licenses not having been renewed, his place of business was closed as of January 1, 1958. Defendant's representative, on Friday preceding the fire on Monday night, endeavored to contact plaintiff in order to pick up the policy and cancel the insurance. Plaintiff was aware of that fact. Nevertheless, he and his wife made a weekend trip to Shreveport.
On returning to Monroe the day of the fire, plaintiff left his wife at her place of employment and went to his place of business for the ostentible purpose of reading his mail. He found the place securely locked. After unlocking and entering through the front door, he found everything inside in order. On leaving, he locked the building. He had the only keys to the building, as well as to a storeroom in which a disinfectant known as Sanor was kept. According to his testimony, no kerosene was kept on the premises. After leaving the place of business, plaintiff proceeded to Jackson, Mississippi, where, near midnight, he received information through telephone calls that his business had burned.
In reviewing the record, the trial court, in a written opinion, stated:
"The Fire Department, through proper officials, made an investigation of this fire immediately upon the Fire Department being called to the scene. The testimony in the case discloses that the building was securely locked and that none of the doors or windows bore any evidence of having been forced open. All of the doors, with the exception of the back door, were still locked when the Fire Department arrived. *547 The back door consisted of double doors. These doors were wooden. One of the doors had a board which overlapped the other door. They were held together by a hasp lock and a padlock being locked through the hasp, all of which was on the inside of the two doors where they met. There was a place on one of the doors both at the top and bottom where latches could be set to hold that door level with the facing or opening and thus insuring the overlapping board to be tight against the other door and then there would be no opening between them. However, if the latch at the top of the door and the latch at the bottom of the door were not secured, both doors would swing outward and even though the hasp lock remained in place secured by the padlock, the testimony of several witnesses showed that a space would exist between the two doors that a person could place his forearm through. The Court feels that this testimony above describing the doors is important for the reason that the testimony of the firemen is to the effect that the main source of the fire that they found when they arrived at the building was at the back door and the doors were introduced as evidence in the case. The hasp and padlock were all in place, showing that the doors were not unlocked. One of the doors had burned nearly completely up. However, the portion of the door which would be protected by the overlapping board on the other door, if the doors were securely shut at the time of the fire, was not burned up and since an opening at that point would create a draft, the portions of the doors which were not burned would have been the first portions that would burn if these doors had been swinging out with a space between them, as this opening would have served as a chimney to suck the flames between the two doors.
"The testimony of the firemen and other witnesses in the case further shows that at several points in the building fires had been set but had not burned very much, the main fire that caused the damage being just inside the two back doors. The testimony further showed that there was a mop, bucket and two cans in the building near the back doors and that the fire gave off a very sweet, pungent odor and a great volume of black smoke. One of the cans in question was the can of disinfectant known as Sanor and when some of it was burned in an experiment the firemen testified that it gave off a sweet odor and when it was mixed with kerosene, it gave off a similar odor to that at the fire at the Sho Bar. The testimony further shows that one of the cans containing the mixture, contained Sanor and kerosene. This was testified to by lay witnesses from smelling the cans and also was the report of the chemist who analyzed the contents of the bucket and can and whose analysis is placed in the record. So there can be no question that this fire was of incendiary origin and that it was deliberately started and that both kerosene and Sanor disinfectant were used to start the fire. Several cans of Sanor were kept in a little outhouse right outside of the back door to the establishment. This outhouse or storage room was locked with a padlock and the plaintiff had the only key thereto. This outhouse was not destroyed by the fire and was intact when the firemen arrived and had not been broken into, and was still locked when the firemen arrived. The negro janitor testified that a can of Sanor used in cleaning the building was kept in a space inside the building near the back door.
"We are faced with the proposition that there is no evidence in the record to show that any door or window was broken or forced prior to the fire. The *548 place was securely locked and the plaintiff had the only key to the premises according to his own testimony. Yet it is apparent that someone entered both the store room to secure the disinfectant (one of the cans therein having been punctured through the top with a screwdriver so as to open same) and the place of business itself as the kerosene and disinfectant were found both on the mop and in the bucket and can inside the place of business at the main origin of the fire.
"The law applicable to civil cases involving arson is quite different from the law involved in criminal charges of arson. In civil cases it is only necessary for the defendant to prove by a proponderance of testimony that the fire was of incendiary origin; that the plaintiff would be the only one to benefit by the fire and that there existed no reasonable explanation as to anyone else having any motive to burn the place. The testimony here shows as above set out that this place was in financial difficulty and that on Friday the insurance company had started to try to cancel this policy; that the place of business had been closed for some time due to the fact that the year, 1957, had expired and the plaintiff was unable to secure a 1958 license. This clearly would show motive on the part of the plaintiff. There is testimony in the record that someone had broken open the juke box and robbed it. However, the place of business had been closed for nearly two weeks and the court does not feel that it would be reasonable for any amount of money to be left in the juke boxes while the business was closed and they were not in operation, especially for a period of nearly two weeks. The plaintiff admits that he himself was on the premises a few hours before the fire, having stopped in Monroe while returning from Shreveport and then continuing to Jackson. In view of the testimony that the plaintiff had the only key to the building and to the storage room, both of which were entered, and the testimony in the record which contains no testimony whatever to indicate that either the main building or the storage room were broken into, it appears to be an utter impossibility for this fire to have been set without plaintiff's co-operation because it was necessary for someone to use one of his keys. Due to the above facts, the Court feels that the defendant has fulfilled and carried the burden of proof by a vast preponderance of testimony in making out the special defense of arson."
Individuals with whom plaintiff was closely associated and who were in contact with him on the night of the fire were Reginald Boulware and Art Randall. Boulware was a former employee and an assistant of plaintiff's in the operation of this business. Mrs. Russell spent the night at the Boulware home, where plaintiff picked her up about 7:00 a. m. the next morning when he returned to Monroe. Neither of these parties was called as a witness.
It is common knowledge there are many ways to set a fire, directly or through others, even though the owner of the property is not present. As the court observed in Parker v. Hartford Fire Ins. Co. of Hartford, Conn., La.App.Orleans 1935, 163 So. 435; Catalanotto v. Minneapolis Fire & Marine Ins. Co., 15 La.App. 320, 131 So. 705; the setting, or causing to be set, of an incendiary fire is always attended by the utmost secrecy. There are usually no witnesses and the illegal act is seldom exposed to the light of day.
Under the jurisprudence well established in this State, once the incendiary origin of a fire is established, proof of motive on the part of an assured, in the absence of believable, rebuttable evidence, is sufficient to sustain the defense of arson. Sumrall v. Providence Washington Ins. Co., 221 La. 633, 60 So.2d 68, 69. See, also, the cases therein cited. In the Sumrall case, *549 the Supreme Court reiterated the general rules concerning the defense of arson in stating:
"Inasmuch as the defense is arson, the burden rested upon the insurer to establish, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. It is well settled that the insurer need not prove its case against a plaintiff beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense. Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire. Adams v. Liverpool & London & Globe Insurance Co., 5 Orleans App. 301; St. Philip v. Lumbermen's Ins. Co. of Philadelphia, 18 La.App. 331, 137 So. 359; Wilson v. Aetna Ins. Co., La.App., 161 So. 650; Parker v. Hartford Fire Ins. Co. of Hartford, Conn., La.App., 163 So. 435; Picoraro v. Insurance Co., 175 La. 416, 143 So. 360; Di Martino v. Continental Ins. Co. of New York, 187 La. 855, 175 So. 598 and Pizzolato v. Liverpool & London & Globe Ins. Co., 207 La. 101, 20 So.2d 551. * * *."
The court, continuing with its opinion, made these observations:
"Considering that plaintiff was in dire financial circumstances and that he alone, according to the evidence, would benefit by the fire, there can be no doubt that defendant has established that he had a motive for destroying the property. And motive, plus the incendiary origin of the fire, would, in the absence of believable rebuttal evidence, be sufficient to sustain the affirmative defense pleaded by the insurer. See Picoraro v. Insurance Co. and other authorities cited above. However, the inference resulting from this circumstantial proof must be weighed in connection with plaintiff's denials of wrongdoing."
In the Parker case, [163 So. 436] the court pointed out the distinction to be made between the character of proof necessary to sustain a criminal charge of arson and that requisite to maintaining a defense in a civil suit on a policy of insurance. There the court said:
"* * * Under the well-recognized rule of criminal law, the crime of arson must be proven beyond a reasonable doubt. If there is a reasonable doubt, there must be an acquittal. In a suit on a policy of fire insurance, the burden of proof rests upon the insurer to establish the facts upon which it has based its defense and seeks a release from its contractual obligation, and, as in all other civil actions, issues of fact are determined by a preponderance of evidence. Thus the rigorous rule of the criminal law, being relaxed in a civil suit, it is conceivable that under the identical set of facts an acquittal might be obtained of the charge of arson in a criminal suit and a good defense maintained in a civil suit on the policy contract. Furthermore, in cases of this character, every kind of evidence, circumstantial or presumptive, which tends to convince the mind may be adduced by either side. The reason for this rule is based upon the fact that the setting or causing to be set of the fire is always attended by the utmost secrecy. There are no eyewitnesses, and the illegal act is seldom exposed to the light of day. * * *."
Here, as in St. Philip v. Lumbermen's Ins. Co. of Philadelphia, 18 La.App. 331, 137 So. 359, it must be conceded there is no direct testimony in the record connecting plaintiff with the burning of this property, as the evidence in that regard is entirely circumstantial, but we believe, as obviously the trial judge believed, that the evidence is sufficient to create a presumption *550 so strong as to exclude any other reasonable hypothesis that the property was destroyed by plaintiff through his own acts or those of persons interposed at his procuration.
In Giglione v. Norwich Union Fire Ins. Soc., 173 La. 801, 138 So. 843, it was held that, where the record negated the existence of a motive in any other person than plaintiff to burn his residence, such as where he had no enemies, and, where he was the only person who could have profited as a result of the fire, the evidence was sufficient to preclude recovery under the policy.
The evidence in the instant case not only establishes that the fire was of incendiary origin, even as plaintiff concedes, but it also establishes that plaintiff had a motive to destroy the property; that no one else had such a motive; and that, accordingly, plaintiff was connected with the origin of the fire. The trial court concluded that defendant had fulfilled and carried the burden of proof by a vast preponderance of testimony in making out its special defense of arson. It is apparent, also, from a reading of his reasons for judgment, and the conclusions reached by him, that he was of the opinion plaintiff had not produced any believable, rebuttable evidence.
It is a well-settled rule that the findings of fact of the trial judge who saw and heard the witnesses and weighed their credibility are entitled to great weight and are not to be disturbed unless manifestly erroneous. Guin v. Commercial Cas. Ins. Co., 224 La. 44, 68 So.2d 752; Barlotta v. Walker, 223 La. 157, 65 So.2d 122; Diez v. Diez, 219 La. 576, 53 So.2d 677.
From our own review of the record, we are not only unable to discern any manifest error in the conclusions reached by the trial court but are of the opinion its findings that plaintiff was responsible for the fire which burned his property and that the motive was the collection of the insurance are eminently correct.
The standard mortgage clause attached to the policy provides that no act of plaintiff can, in any manner, affect the rights of the mortgagee to recover the amount due it. There is a further provision that if liability is denied to the named assured, the insurer, on paying the mortgagee, has a right to demand an assignment of plaintiff's obligation as evidenced by his note and the collateral held by the mortgagee. Pursuant to these provisions, the defendant paid the bank and obtained an assignment of the indebtedness and collateral. Accordingly, defendant is entitled, in reconvention, to a judgment against the plaintiff for the amount of the indebtedness including interest and attorney's fees. Capital Building & Loan Ass'n v. Northern Ins. Co., 166 La. 179, 116 So. 843. We, therefore, find no error in the allowance of defendant's reconventional demand.
Accordingly, for the reasons herein assigned, the judgment appealed is affirmed at plaintiff-appellant's cost.
Affirmed.