FRUGÉ, Judge.
Plaintiff instituted this suit against the defendant insurer for the partial loss of a dwelling caused by a fire of incendiary origin. Additionally, plaintiff claimed penalties of 25% and attorney fees of $2,000 plus $40.00 per month for loss of rentals from the date of the fire until payment of the loss. From a judgment awarding plaintiff $2,152.69 for the partial destruction of the dwelling, $20.00 for loss of rentals, $543.17 as penalties thereon and attorneys fees in the amount of $500.00, defendant has appealed. Plaintiff has likewise appealed, seeking an increase 'in the amount awarded for the loss of rentals and an increase in attorneys’ fees.
The insurer, by way of defense to plaintiff’s claims, alleges that plaintiff was responsible for the partial destruction of this dwelling by fraudulently setting fire to the insured dwelling or procuring other persons to burn it for the purpose of' collecting the insurance.
There is no question but that the fire was of incendiary origin. Thus the sole question to be decided by this court, concerning the liability of the defendant insurer, is the responsibility of plaintiff for its occurrence.
*632 The insured property was a one-family dwelling located on Longpine Street in the City of Alexandria, Louisiana. This property was insured by defendant under a policy issued on August 19, 1955 covering a period from October 6, 1955 to October 6, 1960. This dwelling was originally insured for the sum of $3,000 but by endorsement on September, 1956 the face amount of the policy was increased to $4,000.
The record discloses that plaintiff owns five buildings, each adjacent to the other on contiguous lots on the corner of Mill Street and Longpine Street in the City of Alexandria, Louisiana. They consist of a residence in which plaintiff resided with her two children, a building adjacent to this residence which she operated as a grocery store, a duplex which was located immediately to the rear of the grocery store, a small two-room renthouse situated immediately to the rear of her residence and which had been rented for a considerable period of time and was occupied by Jack Teasley, and finally a six-room rent house which faces Long Pine Street (immediately to the rear of the duplex) and which is the subject of this suit. All of the above property has been continuously rented for the past five or six years and the rent house, which is the subject of this litigation and which sustained damage by incendiary fire had been rented up until the day before this incendiary fire.
In his specification of errors, learned counsel for the defendant insurer submits for our consideration that the trial judge erred in: (1) failing to recognize and apply the well-established principle that, in a defense of arson, once the incendiary origin of the fire is established a showing by the insurer that the insured had both motive and opportunity to set the fire, coupled with proof negating the existence of a motive in any other person than the insured to set the fire, sufficiently connects the insured with the origin of the fire by the creation of a rebuttable presumption that he is responsible for it so as to preclude recovery, and (2) refusing to recognize and apply the v principle of law that a sufficient motive is established to maintain a defense of arson once it is shown that there was no motive and very little opportunity in any person other than the plaintiff to set the fire provided that it has been established that the fire was of incendiary origin; and this is so albeit the plaintiff was not in dire financial circumstances and the amount recovered under the policy would only be slightly greater than the value of the property destroyed.
The trial judge, in his written reasons, set forth the governing principle of law as follows:
“In a defense of arson the burden rests upon the insurer to establish, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. The insurer need not prove its case against the plaintiff beyond a reasonable doubt, it suffices that the evidence preponderates in favor of the defendant. Proof may be by circumstantial evidence, and when it is, a finding for the defendant is warranted where evidence is of such import that it will sustain no other reasonable hypothesis but that the plaintiff is responsible for the fire. The inference or presumption to which proven facts give rise must be strong and almost inevitable. The mere creation of a suspicion will not suffice to defeat an action. And, finally, the facts and circumstances of each particular case are addressed to the sound discretion of the Court.”
Concerning the proof necessary to establish an insurer’s defense of arson, our Supreme Court, in Sumrall v. Providence Washington Insurance Company, 221 La. 633, 60 So.2d 68, 69, enunciated the following rule:
“Inasmuch as the defense is arson, the burden rested upon the insurer to establish, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. It *633 is well settled that the insurer need not prove its case against a plaintiff beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense. Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is zvarranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire.” (Emphasis added.)
This statement of the law was quoted, with approval in Wells v. Twin City Fire Insurance Company, 239 La. 662, 119 So.2d 501, 502, the most recent expression of the Supreme Court on this subject. See also Bennett v. Niagara Fire Insurance Company, La.App., 126 So.2d 718; Creel v. Audubon Insurance Company, La.App., 128 So.2d 284; Russell v. Niagara Fire Insurance Company, La.App., 129 So.2d 545.
Counsel for the defendant insurer, in urging that motive, plus the incendiary origin of the fire, is, in the absence of believable rebuttable evidence, sufficient to sustain the affirmative defense of arson by the insured, also cites the Sumrall decision, supra, and further directs our attention to St. Philip v. Lumbermen’s Insurance Company of Philadelphia, 18 La.App. 331, 137 So. 359; Wilson v. Aetna Ins. Co., La.App., 161 So. 650; Parker v. Hartford Fire Insurance Co. of Hartford, Conn., La.App., 163 So. 435; Picoraro v. Insurance Co. of State of Pennsylvania, 175 La. 416, 143 So. 360.
The following excerpt from the Sumrall decision, 60 So.2d 68, 70, represents the principal authority upon which defendant relies. Therein the court stated that:
“Considering that plaintiff was in dire financial circumstances and that he alone, according to the evidence, would benefit by the fire, there can be no doubt that defendant has established that he had a motive for destroying the property. And motive, plus the incendiary origin of the fire, would, in the absence of believable rebuttal evidence, be sufficient to sustain the affirmative defense pleaded by the insurer.”
An examination of the facts which confronted the court in Sumrall and the other decisions relied upon by defendant convinces us that the courts, when referring to motive, require more than an affirmative finding that the insured is the only one who will collect under the insurance coverage. Thus, in Sumrall, the court found that the insured was in dire financial circumstances. In commenting on the insured’s financial condition, the court emphasized:
“ * * ■ * that he owed many debts and that a number of them were due for labor and materials furnished in the construction work of the house. In this connection, it was shown that various building and material supply houses had filed liens against the property in sums totalling in excess of $2000 and had reduced their claims to judgment.”
Similarly, in Picoraro v. Insurance Company of State of Pennsylvania, 143 So. 360, 361, the court, in elaborating on the facts, stated:
“The property was occupied by the insured until about three months before the fire. He and his wife and their three children lived in the rear part of the building and he conducted a pool room and soft drink establishment in the front part of the building; but he was prosecuted, on two occasions, in the federal court, for selling intoxicating liquor, and pleaded guilty. For the first offense he was fined $200, and for the second offense was fined $500, and sentenced to serve a term of one year in prison, but the sentence of imprisonment was suspended on proof that the defendant was ill. The building was then padlocked by the prohibition enforcement officers, under an order of the federal judge, rendered in an injunction proceeding, *634 declaring the place a public nuisance and ordering it closed for twelve months. * * * ”
The court then went on to say that “the insurance money was more desirable than the vacant building was to Picoraro.”
An examination of the other cases relied upon by defendant would serve no purpose in pronouncing the correct rule of law on this subject. It suffices to say that in all of these cases, the courts did not rely upon the mere fact that plaintiff was the only one who would benefit by the insurance coverage.
Having set forth the principles of law applicable to the case at bar, the next question to be answered is whether plaintiff was responsible for the fire.
The record discloses the following facts which, for the most part, are undisputed by the parties to this suit. A week before the date of the fire, Oliver Norris, his wife and son had been plaintiff’s tenant in the insured premises. At this time Norris informed plaintiff that he and his family were moving out, which they did the day before the fire. Norris testified that before leaving the house he completely cleaned and scrubbed the house. Upon Norris’s departure, he locked the house (he had a key to the front door only). Shortly after the Norris family left, plaintiff went over to check the house and testified that she found the front door locked and all the screens in place.
Some time around midnight on June the 24th or 25th, an alarm for this fire was turned in and two fire trucks, a fire chief’s car and a police cruiser were summoned to the scene. Assistant Fire Chief, John Velotta, testified that upon arrival of the firemen both back doors as well as the front door were locked, all the windows were down, and all of the screens were in place. He further testified that in order to gain entrance 'to the house to fight the fire, the firemen had to kick in the front door. Upon entering the burning dwelling, “setups”, consisting of kerosene soaked rubbish, were found burning in each of three rooms.
Plaintiff established by a preponderance of the evidence that her financial condition was excellent. Her income consisted of approximately $30.00 per week from her grocery store, $40.00 per month from Napoleon Garrett for the support of his minor son, $63.00 per month from the Veterans Administration for the support of her minor daughter, $11.00 per week rental income from a duplex, and $4.00 per week rental income from the small rental property in which Jack Teasley lived. Her assets, in addition to the property previously described, consisted of $1,425.00 in United States Savings Bonds, a vacant lot in another section of Alexandria. Her only indebtedness was a note for $1,700.00 secured by a mortgage on the house in which she lived with her two children.
Learned counsel for the defendant, in urging that there can be no other conclusion but that plaintiff set fire to the dwelling in question, relies principally upon the following contentions:
He submits that plaintiff was the only one who had a motive to set the fire, inasmuch as she was the only one who stood to gain because of the fire insurance on the house. While this is true, such is the situation in most arson cases, since the property owner is normally the only one with an insurable interest in the property.
Counsel also makes much over the fact that the dwelling was found locked when the firemen arrived and that plaintiff had the only key to the front door. The evidence bears out this contention. Additionally, the record establishes that one of the back doors was locked by a sliding bolt from the inside. However, it was also established that the other door could be opened by a skeleton key which can be purchased at any Five and Dime store by anyone.
Counsel for defendant also points out for our consideration that plaintiff sold *635 kerosene in her grocery store; that she owned all of the property adjoining to the insured premise and therefore had easy access to the insured premises.
In view of the above facts as a whole, we are of the opinion that there certainly were suspicious circumstances indicating that plaintiff was responsible for the fire. However, the suspicious circumstances present in this case are not such that we are able to conclude that the trial judge was manifestly erroneous in holding that defendant failed to meet the legal test announced in the Sumrall case, supra, that “a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire.” It is therefore our opinion that defendant has failed in its burden of proving that plaintiff was responsible for the arson in this case.

Damages.

In commenting on the damages sustained by plaintiff as a result of the fire, the trial judge stated:
“The plaintiff produced Mr. James Earl Barentine, manager of Martin Building Materials, Inc. Mr. Bar-entine had been employed by Martin Building Materials for three years. His estimate of the repair was filed in evidence and amounted to $2,152.69. The defendant countered this evidence by the testimony of Mr. O. H. Johnson, a general contractor of Alexandria, Louisiana. The estimate of Mr. Johnson amounted to $1,454.50. He stated that his estimate did not call for any repair to the roof as he did not think that there was damage to the roof. The Court feels that he is in error in this as damage to the roof was found by Mr. Barentine and the pictures filed in evidence of the fire seem to bear out Mr. Barentine’s contention. Furthermore, the estimate of Mr. Johnson calls for repairing the oak floor and painting the floor in six rooms. These are hardwood floors and certainly the plaintiff could not be expected to accept painted hardwood floors in place of natural finished hardwood floors. Mr. Johnson seemed to be very vague in his testimony as is seen my a mere reading of it. The Court feels that the estimate submitted by Mr. Barentine is the more acceptable proof for the damage and adopts it as the amount of loss.”
After review of the evidence, we are likewise of the opinion that damage caused by the fire is more correctly reflected by the estimate of Mr. Barentine, and therefore affirm the lower court in this regard.
Concerning the rental value which plaintiff is entitled to recover, we note the following:
Section 9 of the endorsement to the policy in question provides:
“Rental Value Coverage — When the insurance under this policy covers rental value, such insurance shall cover, in the event of damage or destruction of the described property by a peril insured against, the fair rental value of the building(s), or parts thereof, described as insurable under the principal dwelling item, and, if rental property, as furnished and equipped by the owner or lessor, whether rented or not, for the period of time required with the exercise of due diligence and dispatch to restore the same to a tenantable condition, less such charges and expenses as do not continue. Such period shall not be limited by the date of expiration of this policy.”
The trial judge found that the house could have been restored in about two weeks. Considering the rent which plaintiff had received from her last tenant, he awarded her $20.00 for this item. In our opinion, this award seems proper under the terms of the policy. However, plaintiff urges that the reason plaintiff did not re *636 pair the building until the time of the trial was due to fact that the fireman had advised her not to disturb the property, and that the defendant insurer is now estopped from denying rental value coverage for the entire period it was not in a tenantable condition. In support of this argument plaintiff cites Saperston v. American & Foreign Insurance Company, 142 Misc. 730, 255 N.Y.S. 405.
As we understand the Saperston decision, the court simply held where the insurer delayed the insured in rendering the building tenantable by requiring him to leave the premises in the damaged state, the insured was entitled to be reimbursed for the rental value for the delay caused by the insurer. Thus the court said that the delay created an estoppel which prevented the insurer from raising the question of lack of reasonable diligence and dispatch during such delay.
In the instant case, we find no evidence that the defendant insurer was responsible for the delay in restoring plaintiff’s property. Thus plaintiff’s plea of estoppel is without merit. Accordingly, the award of the lower court for this item is affirmed.
We now come to the question of penalties and attorney fees under LSA-R.S. 22:658, which provides that a failure to make payment within sixty days after receipt of such proof and demand therefor, when such failure is found to be “arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, * * * together with all reasonable attorney’s fees for the prosecution and collection of such loss * * See Welch v. New York Underwriters Insurance Company, La.App., 145 So.2d 376.
We are of the opinion that the evidence as previously discussed clearly establishes that the defendant insurer’s failure to make payment for the loss sustained by plaintiff within sixty days was not “arbitrary, capricious and without probable cause”. From the outset of this dispute, there was little or no doubt that the fire, which damaged plaintiff’s property; was of incendiary origin. This coupled with the peculiar circumstances surrounding its occurrence, in our opinion, created sufficient doubt to prevent the insurer’s refusal to pay from being arbitrary and capricious or without probable cause. The judgment of the lower court will be amended accordingly.
For the reasons assigned herein, the judgment of the lower court is amended so as to exclude all penalties and attorneys fees, and in all other respects affirmed; appellant to pay all costs of this appeal.
Amended and affirmed.